## Harkins v. Hatfield.

(Decided May 3, 1927.)

## Appeal from Floyd Circuit Court.

1. Tenancy in Common.—Where grantor's father died intestate, and was survived by widow and another son, grantor's conveyance of mineral rights in land owned by his father at time of death could at most convey only one-third undivided interest therein, since widow and grantor's brother owned two-thirds undivided interest in land.

2. Partition.—Evidence held not to show parol division of lands inherited from deceased whereby heir, agreeing to sell mineral rights therein, took part of the lands, and his mother and brother the remainder, so as to be ratified by commissioner's deed, in suit for specific performance of heir's contract to convey, where neither the brother nor mother was made party thereto.

3. Estoppel.—Where vendor contracted to convey land in which he had at most one-third undivided interest as heir, and commissioner's deed was executed in suit for specific performance, vendor's subsequent inheritance of the other interests in the land did not inure to benefit of purchaser, since contract was void to extent that it attempted to convey vendor's expectancy.

4. Reformation of Instruments.—That parties were mistaken in construing commissioner's deed as conveying all interests in certain tract was not ground for reformation of subsequent deed covering other land, which was to convey all land inherited by vendor which had not been previously conveyed.

5. Estoppel.—The parties mistakenly believed commissioner's deed, whereby only vendor's undivided interest in mineral rights was conveyed, conveyed all interests, when executing subsequent deed intended to embody all vendor's land not theretofore conveyed, did not constitute estoppel against subsequent purchaser of fee to land within tract conveyed by commissioner's deed on ground that subsequent purchaser had notice of such claim, and was bound by subsequent conduct of parties.

6. Partition.—Where the surface is all owned by one of them, partition is not permitted as between joint owners of minerals.

JOSEPH D. HARKINS for appellants.

COMBS & COMBS for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Cynthia Hatfield sued the heirs of Walter S. Harkins and the Ivaton Oil & Gas Company to quiet her title to a fractional interest in the mineral rights in a 50-acre tract

of land in Floyd county. Judgment was rendered for plaintiff, and the Harkins heirs appeal.

Both parties claim under conveyances from John Moore as common grantor. A. J. Moore died intestate in 1892, the owner of 299.5 acres of land. He was survived by his widow, Rachel Moore, two sons, John and William, and an infant daughter not named in the record. All of whom lived in the same family without any assignment of dower or homestead to the widow. William was an idiot and the daughter died in infancy single and without issue, her share being inherited by her brothers. John made leases to tenants, collected the rents, and exercised general supervision over the farm. The record discloses that he was improvident, if not shiftless, and ran through his estate in a brief period after acquiring full control. Rachel looked after the household, received a portion of the rents, and apparently was a fairly shrewd and intelligent woman. William died about the 19th of June, 1914, and his mother within three or four days thereafter. John inherited their interest in the land. On the 18th of August, 1900, in consideration of 50 cents per acre, John Moore by title bond agreed to sell and convey to W. S. Harkins all the mineral rights in a certain "parcel of land situated on Bull creek on the left-hand fork thereof, and being all the land owned by A. J. Moore at the time of his death." This title bond was duly acknowledged on that date and lodged for record in the Floyd county clerk's office on the 22d of February, 1903. Subsequently W. S. Harkins sued John Moore for specific performance of this contract, but did not make either Rachel or William Moore parties thereto. It appears from the record that $55 of that consideration had been paid. Specific performance was decreed in that action, and by an order of court the master commissioner conveyed by special warranty the minerals in a tract of land containing 65 acres, which was described by metes and bounds and referred to as "the same property sold by John Moore to Walter S. Harkins on the 18th day of August, 1900, by title bond;" the deed continuing, "The said commissioners conveyed all the right, title, and interest legal and equitable of the said John Moore in and to the said property." This tract was part of the A. J. Moore farm, and lay to the west of Bull creek, there being 234.5 acres of that farm on the east of that creek. This deed was properly acknowledged, and was lodged for record on the 11th day of November, 1908. It

further appears that by deed dated September 16, 1901, but executed on the 20th of October, 1908, and not lodged for record until May 26, 1923, John Moore by general warranty deed conveyed the same land to Walter S. Harkins. Rachel Moore was made a party grantor in this deed, but refused to execute it. On the 26th of January, 1914, two or three days after his mother's death, John Moore by title bond contracted to sell and convey to W. S. Harkins the mineral rights in the A. J. Moore farm subject to certain exclusions thus described:

"Being all the lands inherited by John Moore as an heir at law of A. J. Moore, deceased; also all the land inherited by the said John Moore as an heir at law of William Moore, deceased; and also the land inherited by the said John Moore as the only heir of Rachel Moore, deceased, excepting therefrom and not including herein the coal, oil, and minerals, etc., theretofore sold and conveyed by the said John Moore to Walter S. Harkins."

The consideration in the bond was $10 per acre, to be paid within a year, and after the ascertaining of the amount of land by a survey. This title bond was duly recorded on the 4th day of February, 1914. On the 25th of March, 1915, John Moore sold, and by warranty deed conveyed, to Cynthia Stephens and John Stephens jointly the fee in a described tract of land on the west side of Bull creek containing about 50 acres. This tract was embraced in the boundary of the commissioner's mineral deed to Harkins of date November 10, 1908, and the unrecorded deed of John Moore to Harkins of October 24, 1908. Later John Stephens conveyed his interest to C. C. Stephens, who conveyed same to Cynthia Stephens, vesting her with full title to the fee. By virtue of these conveyances, Cynthia Stephens, who has since married ———— Hatfield, has title to the surface, and claims title to so much of the minerals therein as were owned by Rachel and William Moore, and it is this fractional mineral interest that is in dispute.

On the 28th of January, 1916, John Moore filed suit against W. S. Harkins for specific performance of this title bond, and on February 24, 1919, filed an amended petition setting out a description of the 234.5 acres of land lying east of Bull creek, and tendered to Harkins a deed executed by himself and wife for the land so de-

scribed.  On June 30, 1919, Harkins filed answer, counterclaim, and cross-petition.  In this he made several persons defendants, alleging that John Moore had conveyed to them certain portions within the 234.5-acre tract.  At that time the Stephens were in the actual possession of the boundary purchased by them, but they were not made parties to that suit.  Also in the second paragraph of his answer Harkins alleged that John Moore, in his deed of the 16th of September, 1901, had conveyed him the mineral rights in the 65-acre tract above described, and that, in the contract of July 26, 1914, ''there was excluded from and out of said land inherited by said John Moore as an heir at law of A. J. Moore, deceased, the coal and other minerals which had theretofore been sold and conveyed by the said John Moore to this defendant,'' and objected to the deed tendered him by the plaintiff, for the alleged reason that the boundary described therein embraced part of the 65-acre tract; the probable significance of this contention being in the fact that the consideration in the prior conveyance was 50 cents per acre, and in the latter $10 per acre.  That suit was compromised and dismissed; Harkins accepting the deed for 234.5 acres tendered by plaintiff at the price of $2,350.  Subsequent to this, W. S. Harkins died, and his widow and other heirs leased the oil and gas rights in both the 65-acre tract and the 234.5-acre tract to the Ivation Oil & Gas Company, who have drilled in a producing gas well on the land in which Mrs. Hatfield claims an interest.

1.  It will be noted that on August 18, 1900, and November 10, 1908, Rachel Moore owned a dower interest in the entire A. J. Moore farm, and that, aside from this, William Moore owned a one-half undivided interest therein, so at most John Moore could only convey a one-half undivided interest therein.  A feeble attempt has been made to show a parol division of these lands whereby John took the lands west of Bull creek and at the upper end of the farm, and his mother and brother the remainder, and that this justified the master commissioner's deed of October 10, 1908, on the entire interest in the 65-acre tract.  The only evidence to support this is that John claimed and leased the portions mentioned, and received the rents therefrom, and that Mrs. Moore received the rents from the other parts of the farm, but it is not claimed that there was ever any partition or marking of boundaries or separate possession.  Mrs. Moore was solicited to execute the deed to the 65-acre tract, and

flatly refused to do so. John Moore, testifies that no such agreement was made, and is corroborated by other evidence. Aside from this William was admittedly an idiot, incapable of contracting, and neither he nor his mother was made a party to the suit in which the commissioner's deed was executed; hence it cannot be said that a parol contract of division was made or ratified by the court's action in that suit.

2. It is next insisted that, as John Moore inherited the outstanding title from his mother, this inured to the benefit of the grantee, and cured the defect in his title to the 65 acres. This principle has been applied in numerous cases where the subject of the contract is a right or interest that may legally be conveyed, but a different rule applies where the original contract runs counter to public policy, and is denounced as vicious by law, in which case neither party can profit by the outlawed contract. This has been applied to champertous sales of realty (Altemus v. Nickell, 115 Ky. 506, 74 S. W. 221, 24 Ky. Law Rep. 2301, 103 Am. St., Rep. 333), and in this state applies with full force to the sales of expectancies by heirs apparent, where the grantor subsequently inherits the subject of the conveyance, as this does not inure to the vendee under the void conveyance (Spears v. Spaw (Ky.), 118 S. W. 275, 25 L. R. A. (N. S.) 436; Elliott v. Leslie, 124 Ky. 553, 99 S. W. 619, 30 Ky. Law Rep. 743, 124 Am. St. Rep. 418); and a clause of general warranty in the deed does not alter the rule (Flatt v. Flatt, 189 Ky. 801, 225 S. W. 1067; Burton v. Campbell, 176 Ky. 495, 195 S. W. 1091; Hunt v. Smith, 191 Ky. 443, 230 S. W. 936, 17 A. L. R. 588). Considering the age of Mrs. Rachel Moore, the infirmity of William Moore, the improvident disposition of John Moore, and the existing family relations, it is evident that the parties to those contracts intended for the expectancy of John Moore in the estate of his mother and brother to pass under the title bond of August 18, 1900, and the deeds of October 28 and November 10, 1908, and to that extent these instruments were void, and remained unaffected by John Moore's subsequent inheritance of these interests. Indeed, the commissioner's deed might be construed as an intent to convey the interest which John then owned in the property, in which event the vendee received all he purchased, and was not concerned in the title of the other interest.

3.   It is further urged that, by the title bond of January 26, 1914, John Moore, as full owner, contracted to sell all of the mineral lands he had inherited from his father, brother, and mother, exclusive of those that he had theretofore conveyed to W. S. Harkins, and that this embraced all the land formerly owned by his father, including such part of the 65-acre tract as did not pass by the previous conveyances, and that the last deed of John Moore to W. S. Harkins of the 234.5 acres was intended to embrace all such remainder of the Moore farm, and so understood by both grantor and grantee.   And J. D. Harkins testified that John Moore so represented to him at the time he accepted the last-named deed.   It being argued that, as the last-named title bond was recorded prior to Stephens' purchase, they had notice of Harkins' claim, and are bound by the subsequent conduct of the parties; these facts being relied on as an estoppel against the Stephens claim, and in the alternative as grounds for reformation of the last-named deed in the event it is held insufficient to pass all interest in the property in question, both pleas being elaborately pleaded.

While there is some contradiction in the evidence, the facts may be admitted, and yet not constitute a defense. It will be noted that the consideration in the last title bond was $10 per acre; in the first title bond 50 cents per acre.   Both Harkins and Moore were construing the commissioner's deed to convey the entire interest in the 65-acre tract, and Harkins was unwilling to give the increased consideration for any land embraced in that tract, and was unwilling to accept the deed to the 234.5 acres and pay therefor, if it embraced any part thereof. The two deeds embrace the entire boundary.   Harkins was as well advised as to the effect of the commissioner's deed of 65 acres as Moore was, and, when he accepted the deed to the 234.5 acres as embodying all the land not theretofore conveyed, he was not relying on any representation of fact by Moore, but upon the construction of the deeds.   The most that can be said is that they were mistaken as to the effect of the commissioner's deed.   This would not constitute an estoppel against Stephens nor ground for reformation of the deed, to their prejudice.

Adverse possession and champerty are also pleaded, but neither has any application to the facts of this case. While Moore's surface possession would inure to the benefit of Harkins, it would not extend beyond the in-

terest conveyed him. Certainly he did not come in possession any other way.

Lastly, appellants urge that under the general prayer of relief the court should have adjudged the partition of the minerals between them as joint owners. However, partition is not permitted as between joint owners of minerals where the surface is all owned by one of them. Ball v. Clark, 150 Ky. 383, 150 S. W. 359.

Wherefore, perceiving no error, the judgment is affirmed.