## Collier's Guardian v. Collier et al.

(Decided May 31, 1929.)

Wm. F. SIMPSON for appellant.

WARE & WARE for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE McCANDLESS
—Affirming.

James A. Collier inherited several parcels of valuable real estate adjoining the city of Crescent Springs. On the 28th of September, 1926, he conveyed a part of this to his wife, Alice I. Collier. Later he and his wife decided to subdivide the entire property and offer it for sale. To facilitate this plan they decided to place the entire fee in Mrs. Collier. They consulted an attorney, who advised them that James A. Collier could make a deed direct to his wife, but who found the boundaries in the recorded conveyances too indefinite to incorporate in a deed, and who advised that a competent surveyor be employed to survey and properly locate the boundaries, recommending a competent engineer to make that survey. The parties, however, found and employed another surveyor. This gentleman was also a scrivener, and the parties employed him to draw proper conveyances. At his suggestion both Mr. and Mrs. Collier executed a deed to Mrs. Collier's father, Samuel D. Wray, as trustee, who reconveyed to Mrs. Collier. While engaged in preparing the latter deed the scrivener inquired of Mrs. Collier as to the disposition of the property in case of her death. She told him that she was going to prepare a will and give the property to her husband and infant son, Wray (then about four years of age), in case of her death. He informed her that such action was unnecessary and that he would take care of it for her. Accordingly, he prepared the deed from S. D. Wray, trustee, and wife to Alice Collier as if it were a conveyance in fee until he reached the habendum clause, wherein he inserted the words: "In case of the death of the grantee then the real

estate is to go to her husband, James A. Collier and her son, Wray Collier." These deeds were duly executed, acknowledged and delivered. The same surveyor continued with his work of platting and subdividing, and two lots were sold, when it was discovered that by the deed in question Mrs. Collier had only acquired a life estate in the land. Thereupon she and her husband filed this action to reform the last-described deed by canceling the clause vesting the remainder in the husband and son, and directing the commissioner to make a conveyance to Mrs. Collier in fee. Samuel D. Wray as trustee and his wife and the infant, Wray Collier, were made parties, and proper pleadings made up the issues. On final hearing the circuit court granted the relief sought, and the guardian ad litem for Wray Collier has prosecuted an appeal to this court.

The evidence of the parties fully substantiate the above statement of fact, and, in addition, the scrivener testifies that the land is suitable for subdivision and that Mr. and Mrs. Collier directed him to subdivide and plot it—that they might sell it in this way; that the purpose of the above-quoted clause was to give the husband and infant son title to such of the property as remained unsold at Mrs. Collier's death, and that it was inserted in the deed to obviate the necessity of a will, and he further testified:

"Would you have put the clause in there if you thought it would tie up the property and prevent them from selling it? A. No, there is no intention of that kind, it never was intended that way. Q. Please state what title was vested in Alice I. Collier. A. Well, Alice I. Collier has got a full title from the deed which she gets from Mr. Wray, her father. She has a full title. Of course at any time during her life she can sell it; that Mr. Wray was deeding it to her, so she could sell it in town lots, but in case she should die it shows what is to be done with it; it is to go to her husband and her son, but if they dispose of it before she dies, why of course that is different. . . . There would be nothing to go to them if she sold it."

In order to reform a written contract for mutual mistake of the parties the evidence must be clear and convincing, but when so established and it is clear that the minds of the parties never met upon the writing as

executed, a court of equity will reform the contract to conform to the intention of the parties and enforce it as reformed. See, generally, Scott v. Spurr, 169 Ky. 575, 184 S. W. 866; Cecil v. Ky. Live Stock Ins. Co., 165 Ky. 211, 176 S. W. 986; Lamastus v. Morgan's Committee, 178 Ky. 805, 200 S. W. 32, and cases therein cited. It is also established by our decisions that relief may be had where it is clearly established by the evidence that the written memorial of the contract does not evidence the intention of the parties, and that it was signed through a misapprehension of its legal effect. See Burton v. American Bonding & Trust Company, 182 Ky. 637, 206 S. W. 884; Lamastus v. Morgan's Committee, supra. The later case of Harkins v. Hatfield, 221 Ky. 91, 297 S. W. 1109, does not conflict with this view. It is there held that a mutual mistake of law between the parties as to the effect of a recorded instrument would not afford grounds of reformation to the prejudice of third persons. But that decision does not apply to the original parties to the instrument. Also, it has been held that reformation may be had in cases of this character although the party affected thereby is an infant. See Kendall v. Crawford, 77 S. W. 364, 25 Ky. Law Rep. 1224. Finally, it may be stated that it is conclusively established by the evidence in this case that all the parties labored under a misapprehension of the legal effect of the deed, and the chancellor did not err in correcting it to conform to their actual intent.

Wherefore the judgment is affirmed.