## Kentucky West Virginia Gas Co. et al. v. Hatfield.

(Decided June 21, 1935.)

JOSEPH D. HARKINS for appellant.

C. P. STEPHENS, E. L. ALLEN and A. J. MAY for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

In December, 1927, Mrs. Hatfield, the appellee, brought a suit in the Floyd circuit court against the Louisville Gas & Electric Company and the Ivyton Oil & Gas Company to enjoin their continued entering, constructing, and operating a pipe line across her property and connecting it with a gas well thereon for transporting and converting its gas, and for an accounting by the defendants for the gas wrongfully taken therefrom.

The court, upon final submission of the case, which was developed and finally presented, upon the pleadings and proof, as one for ascertaining plaintiff's interest in the well and payment for their jointly owned gas removed therefrom, adjudged plaintiff a recovery therefor against the defendant, here the appellant, at the rate of 20 cents per thousand cubic feet, it being agreed that such was the price received for it by the defendant at the point of delivery, for the adjudged one-half joint interest in the gas which had been produced from the well during its operation from December, 1927, to the bringing of the suit, and a like accounting and price also for one-half such additional amount of gas as the well would have produced at such average rate of production had it been operated during the four-year intervening period between its drilling and completion by the Ivyton Oil & Gas Company in January, 1924, and its later opening of operation in December, 1927, and charging plaintiff with payment to defendant of one-half of the cost incurred by it in drilling the well.

By an amended petition, plaintiff made the Kentucky West Virginia Gas Company a codefendant, alleging that it has acquired an interest in the gas well in controversy under an assignment from the defendant Ivyton Oil & Gas Company of an oil and gas lease covering plaintiff's property and under which it had drilled the one gas well in controversy on plaintiff's land.

This oil and gas lease assigned the appellant (as shown by the record) was in 1922 executed to the Ivyton Oil & Gas Company by Josie D. Harkins, one of the heirs of Walter S. Harkins, upon two tracts of some 300 acres of land, which they claimed embraced as a portion thereof the mineral rights in a 50-acre tract claimed by plaintiff and here involved. Both plaintiff and Josie D. Harkins, the lessor, claimed under conveyances from John Moore, as their common grantor.

Learning of Harkin's execution of this lease upon the land and minerals claimed by her to the Ivyton Oil & Gas Company, plaintiff conferred with the Harkins heirs as to their having included in it the mineral rights in her 50-acre tract, as to which she claimed under her deed a joint ownership with them. This claim, however, they denied and refused to recognize. Also she submitted her deed, supporting such claim of joint ownership in the mineral rights of this 50-acre tract to the defendant lessee, and protested against its entering and drilling thereon, in disregard of her rights, until her title and interest in the 50-acre tract and its minerals might be settled.

Failing in these efforts to secure from the Harkins heirs, or their lessee, either recognition of her interest in the minerals or a postponement of drilling, plaintiff in December, 1923, filed a suit in the Floyd circuit court for a determination of her rights in the property. The suit resulted in her being adjudged the sole owner of the surface estate of the 50-acre tract embraced in the Harkins lease, assigned appellant, and of an undivided one-half joint interest in its underlying minerals.

Upon appeal this judgment was affirmed in May, 1927. Harkins v. Hatfield, 221 Ky. 91, 297 S. W. 1109.

Soon after this suit was filed by the plaintiff (here the appellee) to quiet her title and rights in this 50-acre tract and its underlying minerals, the defendant lessee, the Ivyton Oil & Gas Company, in January, 1924, started and completed the drilling thereon of the gas well in controversy, referred to in the record as the John Moore well, No. 4. Upon the bringing in of this gas well, which showed a very large and valuable volume of gas production, it was immediately closed or shut down and never operated by the lessee until nearly four years thereafter, when it was reopened and operated by the appellant in December, 1927.

During this period it appears that other gas wells had been drilled by the defendant lessee upon its leased lands lying adjacent to this tract, the operation of which, plaintiff claimed, had drained off large quantities of gas from plaintiff's well, resulting in appellant's unjust enrichment, in that no accounting or payment was made her for her interest in the jointly owned gas so taken and converted by it. Feeling injured in her

rights by reason of such alleged wrongful taking of her gas, by reason of the appellant's having entered upon her lands and laid and connected with this well its pipe line for taking and transporting its jointly owned gas, she filed this suit, seeking an accounting and payment for her share of the price received for the gas taken and for determination of her interest in the sale proceeds of their jointly owned gas proposed to be taken and marketed by the defendant during its operation of the well.

Plaintiff's amended petitions alleged that the defendant lessee and the codefendant, the Kentucky West Virginia Gas Company, had entered into a combination with the heirs of Walter Harkins, who claimed to own the gas and other minerals under said 50-acre tract against the claim of plaintiff therein, by which they sought by concerted action to wrongfully trespass upon her lands and take and convert to their own use large quantities of marketable gas produced from her well; also she alleged that the defendant's acting in concert with the Harkins' heirs, in persistently asserting title to said oil and gas adverse to the plaintiff, amounted to a repudiation of her title therein and constituted it a willful trespasser upon her land and the taking of her gas, by reason of which plaintiff was not liable for, or chargeable with, any part of the cost incurred in the drilling of said well producing said gas, and was entitled to recover one-half of the fair market value received therefor by her cotenant at the place marketed and sold by it.

The defendant, by answer and counterclaim, controverted the allegations of the petitions and affirmatively pleaded the execution by the Harkins heirs of a lease in March, 1922, to the Ivyton Oil & Gas Company covering the tract of land here involved; also that, at about the time of the completion of the well, Mrs. Hatfield had filed suit against the Harkins heirs, appellant's lessors, affecting title to an one-half interest in the minerals under her 50-acre portion of the land embraced in their leasehold, and in said suit had been adjudged to be the owner of the claimed one-half interest therein; that the cost to lessee in drilling the well was $4,075.76; and that it was entitled to market the gas therefrom, and had offered to lease or contract with the plaintiff as its cotenant in the mineral rights for her one-half thereof. Further it pleaded and admitted that

plaintiff was entitled to be paid for her part of this jointly owned gas the reasonable and customary royalty (on her one-half of an one-eighth part of said gas) or 9 cents per 1,000 cubic feet; also that they had entered on the land in good faith as lessee and cotenant with plaintiff in the jointly owned gas, and had made the expenditures incurred in drilling, equipping, and operating the well for its gas production and for transportation and marketing it, and that plaintiff was only entitled to an one-half interest in the well and gross sale proceeds of the gas so produced and marketed upon her accounting to the defendant for a one-half part of these costs incurred, to be paid out of her share of the gross market value thereof, or otherwise to an accounting made her, on the basis of a lessor, which it alleged should be at the customary rate of 9 cents per thousand cubic feet.

It is to be noted, as standing uncontroverted by the record, that the defendant Louisville Gas & Electric Company never had any interest in the property in controversy; that the Ivyton Oil & Gas Company, named as a defendant, conveyed and transferred its holdings to the codefendant, the Kentucky West Virginia Gas Co., after November, 1926, and each is therefore eliminated from our consideration as being no longer here a party in interest; that the gas well in controversy was commenced January 10 and completed January 31, 1924, and that it was connected to the appellant's pipe line for marketing the gas on December 24, 1927, from which date its gas was taken and sold by appellant; that the gas from the well in question and from the Bull Creek district, where it was located, was marketed in part into the pipe line of the Kentucky Pipe Line Company at Sitka and in part into the pipe line of the Warfield Natural Gas Company at Maytown, Ky., by the appellant Kentucky West Virginia Gas Company; that the distance from the well to Sitka is 22 miles; and that the price of gas delivered there from this well was 20 cents per thousand cubic feet.

Upon submission of the cause for judgment, the trial court awarded the plaintiff, here the appellee, recovery against the appellant, as a trespasser, for a one-half share of the gross sale receipts of 20 cents per thousand cubic feet for the gas delivered from this well by the defendant into the pipe line at Sitka; also the appellant company was charged with the amount of gas

which it should have produced by operation of this well during the more than four-year period it was shut down at a like price, upon the grounds that "it drilled wells around plaintiff's land, shut this well in and mined her gas through these outside wells." Such recovery allowed, however, was subject to a credit of some $2,000, or one-half of the cost of drilling the well in question.

Challenging the propriety of this holding, the Kentucky West Virginia Gas Company has appealed, contending that same is erroneous as being in conflict with the well-established rule of this jurisdiction applicable for measuring and fixing the correlative rights of cotenants in jointly owned minerals, where one of them appropriates to his own use a part of them.

The appellant, as the lessee of the Harkins heirs, has succeeded to their rights or joint ownership with Mrs. Hatfield in these minerals, and it is well settled that such lessee and joint owner had the right, as such, to enter upon this 50-acre tract for the purpose of developing the jointly owned minerals thereunder. Thornton's Law of Oil and Gas, sec. 312.

In the case of New Domain Oil & Gas Co. v. McKinney, 188 Ky. 183, 221 S. W. 245, 251, where the court had under consideration a similar question to that here presented, it was held that, where one cotenant of minerals, such as petroleum or other mineral of a fugacious nature, operates in good faith the property alone, he is liable to account to his cotenant for the value in situ of his property converted or for the cotenant's proportion of the net value of the oil produced, which is its market value less the cost of extracting and marketing it, including overhead charges, etc. Continuing, the language of the opinion is:

> "Any other rule, it seems to us, would be not only inequitable, but illogical; for, if the operating tenant could be made liable for the gross amount of the plaintiff's proportion of the oil produced, the right of the former would be fixed according to the rules governing an operation by a willful trespasser, who had no interest whatever in the mineral. * * * Moreover, it would be illogical to say that a cotenant could lawfully operate the joint property [as he may do, Thornton, supra, sec. 312] and at the same time be compelled to divide the gross proceeds or profits with his joint tenant, thus circum-

scribing his rights according to the rule applicable to a willful and malicious trespasser without pretense of title or right."

This same question as to the proper method of accounting between cotenants in minerals, where one of them operates and appropriates to his own use a part of the jointly owned property, was again considered in the later case of Swiss Oil Corporation v. Hupp, 253 Ky. 552, 69 S. W. (2d) 1037, 1044, where it was held that the defendant in drilling for and withdrawing oil under an invalid top lease was an innocent trespasser, and that the measure of damages recoverable by a prior oil lessee was for the net value of the oil as established by the sale price.

The court, in there discussing and approving the principle and rule announced (as quoted) in the McKinney Case, supra, said:

"Under the influence of our decisions as to coal, and following the Pennsylvania rule applying the royalty basis for past conversion of oil, it was decided that up to the filing of the suit by the infant the oil company was accountable only for the plaintiff's fractional share of the usual royalty. Considering that the filing of the suit brought notice of the situation to the oil company and it could not thereafter claim to be innocent, it was held such method of fixing compensation was not the proper one. We refused, however, to apply the harsh rule as to a willful trespasser to a cotenant where the mineral involved was of such a fugitive nature as to be liable to loss through adjacent operations, and held that, while the cotenant should not be penalized by making it responsible for the gross production, it should account to the other joint owner for her proportion of the net value of the oil produced, which was the market value less cost of extracting and marketing it. So it will be observed that, when knowledge was received that another person had the same status in relation to the ownership of the oil as the one to be charged, it was held that there was an equality of right and that the net proceeds of the jointly owned property, to wit, the captured oil, should be divided proportionately.

"In the light of all these cases, the court is of

the opinion that the general rule that the compensation or damages should be the net value of the oil as established by the sale price is the proper one under the circumstances presented in this case. * * *,,

Applying the principle and rule as announced in these well-considered cases to the facts here presented, it is to be noted that the appellant had knowledge of the appellee's right and ownership to an equal one-half interest in the gas throughout all the period it operated the well and marketed the gas, thus bringing the plaintiff's claim within the rule announced, supra, that, after the operating cotenant had notice of the other joint owner's interest in the oil (in that case), it should account to such other owner for her proportionate part of the net value of the oil produced which was the market value, less cost of extracting and marketing it. We are therefore led to conclude that such approved measure of accounting for the compensation to be paid another cotenant or joint owner as for only the net value of the gas as established by its sale price is the proper and applicable one for the determination of the rights of the parties upon the facts here presented. Further, under the rule as above announced, it was clearly not the duty of the appellant, no more than that of appellee, to drill offsetting wells to the outlying wells on lands adjacent to this 50-acre tract, for the purpose of protecting their joint interest in the well in controversy. Neither are we prepared to say that it was the duty of the appellant to continuously operate the gas well in question after its completion, for the sake of their present profitable realization from its production and sale, any more than it was its duty, as such cotenant and joint owner in the gas, to have originally begun the drilling of a gas well because of other near-by wells conceived of as draining their jointly owned gas.

Such being our views based upon the principles hereinabove announced, we conclude that the learned chancellor erred in adjudging plaintiff, a joint owner and cotenant in the gas produced by the well in question, to recover against the defendant as a willful trespasser in appropriating and marketing a portion of this gas, holding it to account to plaintiff for one-half of its gross sale price at point of delivery, rather than adjudging that she recover only her proportion of one-half of the net value of market value of the gas, less

the cost of extracting and marketing it, and also that it erred in charging the appellant with the value of the gas which it perhaps might have, but did not, produce from this well during the four-year or longer period it was neither connected with the pipe line nor operated.

Therefore, for the reasons indicated, the chancellor's decree, being not in harmony with the views here expressed, is reversed, and the court, upon a return of the case, will take such steps or hear such further proof, if any, as may be deemed by it required for determining what is the net market value of this jointly owned gas which appellant has taken or may take in the operation of this well, in accordance with the rule and principle announced in this opinion.