**Claude P. STEPHENS et al., Appellants,**

v.

**John CLICK et al., Appellees.**

Court of Appeals of Kentucky.

June 24, 1955.

Rehearing Denied March 23, 1956.

Claude P. Stephens, Combs & Combs, Prestonsburg, for appellants.

Clark Pratt, Hindman, for appellees.

SIMS, Judge.

This is an appeal by defendants, Claude P. Stephens and Kentucky-West Virginia Gas Company (hereinafter referred to as the Company) from a judgment of the Knott Circuit Court decreeing plaintiffs, John Click and wife Lola, to be the owners of, and quieting their title to $\frac{1}{8}$ undivided interest in the oil and gas underlying their farm of 79 acres located in Knott County; and ordering the Company to account to plaintiffs for their $\frac{1}{8}$ of the gas produced and marketed from the premises after charging them with $\frac{1}{8}$ of the cost of drilling the well.

While the deed is not shown in the record, it is stipulated that on September 10, 1903, John Smith and wife conveyed the minerals in a tract of 338 acres to the Northern Coal & Coke Company with this reservation: "$\frac{1}{8}$ of the oil and gas is reserved for the benefit of the grantor." By mesne conveyances the Kentucky-West Virginia Gas Company became the owner of the remaining $\frac{7}{8}$ interest in the oil and gas in this tract.

John Smith died intestate May 6, 1917, survived by a widow and eight children, one of whom was Marjorie Smith Parks. In August 1917, John Smith's lands were partitioned by the Knott County Court among his widow and eight children. Marjorie was given tract No. 6 comprising 79 acres. At the time the land was partitioned,

neither the widow nor any of the heirs knew of the reservation of ⅛ interest in the oil and gas.

In 1927, Marjorie conveyed by general warranty deed to her daughter and son-in-law, Lola and John Click, the present plaintiffs, her 79 acres. Marjorie reserved a home on the farm for her life but no other reservations were made and the deed was recorded November 25, 1927.

Sometime in 1933, the children of John Smith learned they owned an undivided ⅛ interest in the oil and gas in the 338 acres as the result of the reservation made by their father in the conveyance of the mineral he executed on September 10, 1903. On February 19, 1935, the then surviving children of John Smith by deed conveyed to C. P. Stephens, a present defendant, their ⅛ interest in the oil and gas in the 338 acres. Marjorie Parks joined in this deed under the name of "Margine Parks" in the caption but appears to have signed the instrument as "Margie Parks". We here call attention to the fact that Marjorie's name appears in the record spelled at least three different ways. However, Marjorie is one and the same person regardless of the different ways in which she spelled her given name. At the time Marjorie joined in the deed to Stephens, she owned a part of the dower tract allotted to her mother and also a part of a tract which was allotted to her brother, Bill Smith, both of whom had died in 1932. Marjorie died a few years before this suit was instituted.

On January 23, 1943, Stephens leased to the Company the ⅛ interest in the oil and gas in the 338 acre tract, which included the 79 acres of land Marjorie had conveyed to Lola and John Click. Stephens was under the impression he had obtained title to the ⅛ interest in the oil and gas in all the original John Smith tract of 338 acres.

Marjorie made her home part of the time with the Clicks on the land she conveyed them and the rest of the time she spent in the home of another daughter. The Company did not drill upon the Click land until the fall of 1944 and there was an interim of about two years when delay rentals were paid on the ⅛ interest in the oil and gas the Smith heirs had conveyed Stephens. Marjorie received her proportionate share of these rentals while she was living in the Click home. This fact was known to Click and his wife and they during the interim received no delay rentals. John Click testified that when Marjorie executed the deed to Stephens he did not know she was conveying the oil and gas in the land she sold him, nor did she, and both of them believed she was conveying her interest in the oil and gas in the dower tract.

When the Company moved a rig on the Click farm in the fall of 1944, the fence was taken down and a road built, all without objection from Click and his wife. Mr. Click went to the drilling rig practically every day and one of the tool-dressers boarded in the Click home.

Mr. and Mrs. Click testified that she wrote a letter to the Company a "right smart little bit after they started drilling" advising it of their interest in the oil and gas. Officials of the Company testified they never received this letter. Click testified that three months after Stephens purchased Mrs. Park's interest in the oil and gas he saw Stephens on the street in Hindman and attempted to tell him he had purchased from the wrong person, but Stephens would not talk to him. Stephens admitted seeing Click in Hindman but denied Click ever called his attention to the fact that plaintiffs were claiming the ⅛ interest in the oil and gas in the land Marjorie had conveyed him and his wife.

The well was started in the fall of 1944 and completed on December 28 of that year. Click testified he told several of the men working on the rig while the well was being drilled that he and his wife had an interest in the oil and gas. But these men were working for an independent drilling contractor who had no connection with the Company and this word never reached it. Through his attorney Click notified the Company by letter of his and his wife's interest in the oil and gas on their farm. The Company admits receiving this letter.

Stephens and the Company pleaded laches and estoppel against the Clicks, and strenuously argue the delay of the Clicks in not instituting this action until ten years after Marjorie executed the deed to Stephens, and until several years after her death, and in standing by in silence until the Company completed the well, prevents them from now recovering their interest in the gas being produced. But according to the testimony of the Clicks they were guilty of no such conduct. John Click testified that soon after Stephens took a deed from Marjorie he tried to tell Stephens in Hindman he had bought from the wrong person. Both the Clicks testified that soon after the drilling rig was moved on their land Mrs. Click wrote the Company notifying it they owned ⅛ of the oil and gas under this land. True, Stephens denied Click said this to him, and the Company denied receiving Mrs. Click's letter, yet the chancellor had ample testimony upon which to base his decision that the Clicks' conduct did not make them guilty of laches, nor did it amount to an estoppel. Patently, the chancellor in determining whether the Clicks stood silently by while the well was being drilled with the fraudulent intention to take advantage of defendants, gave some weight to the uncontradicted testimony that during the drilling of the well Click told the drillers he owned ⅛ of the oil and gas under the land. The drillers were not agents of the Company and this word never reached it, yet this does show the unlearned Clicks in dealing with a lawyer and with an experienced oil and gas company were not remaining silent with a fraudulent intent.

██ Plaintiffs' title had been on record since 1927 and this was constructive notice to defendants. Had defendants been careful in abstracting the title to this property they would have found plaintiffs' fee simple deed to their farm, which included their title to ⅛ of the oil and gas underlying it. It is the general rule that one relying upon the silence of another to estop the latter must be without actual knowledge of the truth and without means of acquiring it. Cox v. Simmerman, 243

Ky. 474, 48 S.W.2d 1078. The conveyance by Marjorie to the Clicks of the fee in this land, without reservation, embraced all the minerals under it, as well as the surface. Ratcliff's Guardian v. Ratcliff, 242 Ky. 419, 46 S.W.2d 504; Mills v. Mills, 275 Ky. 431, 121 S.W.2d 962. We do not understand how it would be doing equity to deprive plaintiffs of their interest in the oil and gas under their land even though they may not have acted as soon as they should or may not have been as vigorous as they should in protecting their property, when this record shows defendants could have received full information by proper and careful examination of the deed books in the county court clerk's office.

██ Plaintiffs owned a ⅛ and defendants owned a ⅞ undivided interest in the oil and gas in this land. Therefore, plaintiffs could not have prevented defendants from coming on their farm and drilling. New Domain Oil & Gas Co. v. McKinney, 188 Ky. 183, 221 S.W. 245; Kentucky West Virginia Gas Co. v. Hatfield, 260 Ky. 315, 85 S.W.2d 672. Under the McKinney opinion plaintiffs are entitled to ⅛ of the oil and gas after the payment of ⅛ of the cost of drilling and operating the well. This is the distribution of the gas made by the trial court in the instant case.

██ Defendants insist the court erred in adjudging plaintiffs ⅛ of the gas since by the partition deed plaintiffs' grantor got a 1/64 of the oil and gas in the entire 338 tract rather than a ⅛ interest thereof in the particular tract conveyed her. Defendants are in error. The partition deed shows Marjorie was conveyed the "full and complete title" in the 79 acre tract allotted to her. This language cannot be construed other than as conveying Marjorie a fee in this land which would include the minerals underlying it that had not been previously conveyed by John Smith. As Smith had reserved ⅛ of the oil and gas in the entire 338 acres, the grantee in each particular tract partitioned took ⅛ of the oil and gas underlying that particular tract rather than a 1/64 thereof underlying the entire 338

acres. As above pointed out, a conveyance of a fee in this land, without reservation, includes all minerals underlying it.

The fact that none of the heirs knew at the time of the partitioning of their father's lands he had reserved a ⅛ interest in the oil and gas under this 338 acre tract is immaterial. They conveyed to each other all the interest their father owned in this land, regardless of whether or not they knew the extent of that interest. Had they been of the mistaken impression their father owned all the minerals underlying the land, this fact would not have given the various grantees any better title than their ancestor had. Likewise, the ignorance of the various heirs of their father's reservation of ⅛ of the oil and gas in the mineral deed he executed did not prevent each grantee from taking this ⅛ in the oil and gas in the particular tract conveyed to him or to her.

The judgment is affirmed.